## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARYELLEN TAGGART and | : |
| NANCY M. PRZYCHOWICZ, | : |
|    Plaintiffs, | : |
|       v. | :   Civil Action No. 10-669-RGA |
| VERIZON DELAWARE LLC | : |
| d/b/a VERIZON DELAWARE INC., | : |
|    Defendant. | : |

## MEMORANDUM OPINION

Jeffrey K. Martin, Esq., Martin & Associates, P.A.,Wilmington, DE, Attorney for Plaintiffs.

Brian M. Rostocki, Esq., Reed Smith LLP, Wilmington, DE; Sara A. Begley, Esq., Miriam S. Edelstein, Esq., Reed Smith LLP, Philadelphia, PA, Attorneys for Defendant.

February $\underline{\phantom{1}}$, 2013

*Andrew G Andrews*

ANDREWS, U.S/DISTRICT JUDGE:

Presently before the Court is Defendant's Motion for Summary Judgment (D.I. 37) and related briefing (D.I. 38-1, 54, 56, 59). For the reasons discussed, the motion is granted, and judgment will be entered for Defendant.

## BACKGROUND

Przychowicz is a current Verizon Maintenance Administrator and former union steward, and Taggart is a former Verizon Assignment Technician who retired in December 2009. Both Plaintiffs are female.

Przychowicz and Taggart administratively filed charges alleging the conduct of a Verizon manager, Andrew Quinn, Jr., comprises gender discrimination under Title VII. (D.I. 1-1 at 25). Przychowicz filed her gender discrimination charge with the Delaware Department of Labor ("DDOL") on October 14, 2009, which sent Przychowicz a right to sue letter on July 12, 2010. (D.I. 39-4, Ex. 1, 13). Taggart filed her charge on April 8, 2008, and was sent a right to sue letter at her home address on June 30, 2009. (D.I. 39-2, Ex. 13).

Przychowicz and Taggart both assert that they were retaliated against, by managers other than Quinn, because of their discrimination claims. Przychowicz filed a charge of retaliation with the DDOL and Equal Employment Opportunity Commission ("EEOC") on May 17, 2010; the DDOL issued a right to sue letter on April 1, 2011. (D.I. 39-4, Ex. 2; D.I. 39-7). Taggart also filed a retaliation charge on May 17, 2010, and was sent a right to sue notice on June 20, 2011. (D.I. 39-2, Exs. 16, 18, 19).[1]

---

[1] That Przychowicz and Taggart filed suit before getting their right-to-sue letters does not deprive the Court of jurisdiction, *see Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 357-58 & n.5 (3d Cir. 1984), and is otherwise irrelevant at this point. (D.I. 61, 62).

1

This lawsuit was filed July 12, 2010, in which Przychowicz claims discrimination (Count

I) and retaliation (Count II), and Taggart claims retaliation (Count II).[2]  (D.I. 1-1 at 25-28).

Pryzchowicz claims discrimination based on the following incidents:

- Interventions in her shop steward capacity on behalf of male and female
  employees in confrontations with Quinn in 2006, 2007, and an undated period
  (D.I. 39-4 at 37-46, 55-57);

- Quinn and a female supervisor, Christine Pareskewich, confronting Pryzchowicz
  to return to work after her break was over, and Quinn continuing to confront
  Pryzchowicz when it appeared a coworker stopped Pryzchowicz's break clock to
  make it appear Pryzchowicz was working while on her break (*id.* at 57-60);

- Quinn confronting Pryzchowicz for distributing union literature (*id.* at 61);

- In June, 2008, Quinn and a female supervisor confronting Pryzchowicz for having
  an unauthorized personalized computer wallpaper, while Pryzchowicz believes
  other female employees were permitted to use such wallpapers (*id.* at 84, 86-91,
  129, Ex. 1; D.I. 39-5);

- Quinn confronting Pryzchowicz for switching desks with another employee
  without authorization (D.I. 39-4 at 91-92); and

- On November 26, 2008, Quinn disciplining Przychowicz for using work computer
  for personal activity, which ultimately led to a suspension.  (*Id.* at 77-83, 129, Ex.
  1; D.I. 39-5).

Pryzchowicz claims retaliation for her discrimination charge based on the following

incidents:

- A December 1, 2009, incident when Przychowicz was told she would not be paid
  for a day based on Pryzchowicz's erroneous time entry, where Pryzchowicz's
  supervisor, Paraskewich, did not catch the error (D.I. 39-4 at 141-43); and

---

[2]  Taggart's claims are limited to retaliation.  Defendant points out that any gender
discrimination claim Taggart might have been asserting in this case would have been time-barred
and precluded as unexhausted, and Taggart does not oppose that conclusion.  It is undisputed that
Taggart did not file any gender discrimination suit within ninety days of receipt of her EEOC
Right to Sue Letter.  *See* 42 U.S.C. § 2000e-5(f)(1); *Mosel v. Hills Dept. Store, Inc.*, 789 F.2d
251, 253 (3d Cir. 1986).

2

- A January 25, 2010, incident when an absence administrator, Tracy Purshock, manipulated the system to make it difficult for Przychowicz to take approved FMLA leave. (*Id.* at 102-05, 141-42).

Taggart claims retaliation for her April 8, 2008, discrimination charge, based on the following incidents:

- Supervisor Marilyn Bilson leaving Taggart off of emails;

- Bilson not responding to Taggart's instant messages;

- Bilson making "snide remarks";

- Bilson issuing a written warning to Taggart after an unidentified coworker sent Taggart's work to a fourth employee for review. The warning was ultimately rescinded;

- Supervisor Brian Magee approving a request by Taggart's group to move from the second floor of Verizon's Tatnall Street facility by moving the group to the third floor, which required cleaning, instead of the fourth floor, which was set up;

- Coworker Christine Paraskewich remarking after the Tatnall Street move that the group had "learned their lesson" and "would keep their mouths shut";

- Taggart's group moving from Tatnall Street to Verizon's Washington Street facility in October, 2009;

- Magee presenting Taggart with a retirement offer in November, 2009, noting that she would not receive a better offer and that Taggart's husband was not working;

- Taggart's computer being broken, but having it fixed after reporting it to supervisors Kathleen McDermott and Robin Herr;

- Magee, McDermott, and Herr asking Taggart when she would retire; and

- Being forced to work with less pay and a smaller pension.

(D.I. 39-2 at 32-40, 44, 55, 75, 82-84; D.I. 39-2, Ex. 16).

3

## DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED.R.CIV.P. 56(a). With respect to summary judgment in discrimination cases, the court's role is

"to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the

light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of

material fact as to whether the employer intentionally discriminated against the plaintiff."

*Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987). The moving party has the initial

burden of proving the absence of a genuinely disputed material fact relative to the claims in

question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could

affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the

evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party."

*Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing

out to the district court that there is an absence of evidence supporting the nonmoving party's

case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986);

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving

party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to

particular parts of materials in the record, including depositions, documents, electronically stored

4

information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." FED.R.CIV.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49; *see Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

**B. Decision**

*1. Lack of Admissible Evidence Supporting Plaintiffs' Claims*

There is an extensive record in this case. The parties have been engaged in discovery for two years, and the docket reflects written discovery, document production, third party subpoenas, depositions of Plaintiffs and Quinn, and an independent medical examination of Przychowicz. (D.I. 7, 8, 9, 12, 15, 20, 21, 24, 27, 28, 29, 30, 44). Yet Plaintiffs' Opposition to the motion relies almost entirely on citations to the Complaint and declarations by each Plaintiff stating only that "[t]he facts in the Complaint pertaining to me are true and correct to the best of my

5

knowledge and belief."[3]  (D.I. 54-1, 52-4; D.I. 56 at 2-27).   Complaint allegations pertaining to persons other than Plaintiffs are completely unsupported.

While Plaintiffs may support their assertion that facts are genuinely disputed with declarations, their declarations here do not comply with Rule 56(c)(4).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED.R.CIV. P. 56(c)(4).  Plaintiffs' cursory declarations refer only to the Complaint, and do not set forth any facts that would be admissible in evidence or address either Plaintiff's competence.  (D.I. 54-1, 54-2).[4]

Where Plaintiffs cite only to the original Complaint and their own insufficient declarations to dispute Defendant's factual assertions, the Court considers the factual assertion to be undisputed and a basis on which summary judgment may be granted.  *See* FED.R.CIV. P. 56(e)(2), (3).  This is particularly appropriate where a Plaintiff's deposition testimony conflicts with the Complaint.  In other words, where Defendant proves up its Motion using record evidence, and a Plaintiff attempts to refute it citing only to the Complaint, Defendant's Motion

---

[3] Plaintiffs do cite Quinn's deposition testimony denying much of his alleged conduct at issue.  (D.I. 56 at 27-28).

[4] I accept that Plaintiffs are adults and would be competent to testify to matters about which each has personal knowledge.  The substantial deficiency with what Plaintiffs have done is that their declarations do not make clear which allegations in the Complaint are meant to be included within the declarations.  Some things are obvious.  For example, the declarations clearly offer no support for the Complaint's allegations that men were treated differently (D.I. 1-1, ¶¶ 62-64), and the bulk of the allegations about the treatment of "other women."  (*Id.*, ¶¶ 53-61).  The "other women" section does include fleeting references to Przychowicz, but not in such a way that one could conclude any meaningful amount of the allegations would be admissible in evidence through Przychowicz's testimony.  Needless to say, it is hard to prove discrimination when there is no evidence of how anyone else was treated.

will be granted.

### 2. Incomplete Exhaustion of Administrative Remedies

Title VII requires exhaustion of administrative remedies prior to filing suit in federal

court. *See* 42 U.S.C. § 2000e-5(e)(1); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798

(1973). "A Title VII plaintiff in a 'deferral state' such as Delaware must file a charge of

discrimination with the EEOC within 300 days of the alleged unlawful conduct." *Lacy v.*

*National R.R. Passenger Corp.*, 254 Fed. Appx. 934, 936 (3d Cir. 2007). The parameters of the

civil action in the district court are defined by the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination. *Barzanty v. Verizon PA,*

*Inc.*, 361 Fed. Appx. 411, 414 (3d Cir. 2010). This restriction hinders a plaintiff from "greatly

expand[ing] an investigation simply by alleging new and different facts when [s]he [is] contacted

by the Commission following [her] charge." *Id.*

#### a. Przychowicz's Gender Discrimination Claim

Defendant asserts Przychowicz did not fully exhaust her gender discrimination claim

(Count I). Defendant asserts Przychowicz filed only one discrimination charge, on October 14,

2009. (D.I. 39-4, Ex. 1; D.I. 38-1 at 24; D.I. 59 at 6). Przychowicz argues she filed an earlier

charge with the EEOC on October 22, 2008, but cites only to the Complaint and not to anywhere

in the record. (D.I. 56 at 18, *see* D.I. 1-1, ¶ 94). Only the October 2009 charge is properly before

the Court.

Defendant argues Przychowicz's October 2009 discrimination charge does not exhaust

events earlier than November 26, 2008 or later than June 19, 2009 (the dates Przychowsicz

charged discrimination took place), so allegations of Przychowicz intervening against Quinn as

7

union steward in 2006 and 2007; ordering Przychowicz to remove her personalized screensaver in June 2008; and ordering Przychowicz to move her desk on an unidentified date are not exhausted. (D.I. 39-4, Ex. 1; D.I. 38-1 at 24).

The October 2009 charge references Quinn generally "scrutiniz[ing] [Przychowicz's] work as a union shop steward." (D.I. 39-4, Ex. 1). The undated shop steward intervention(s) can reasonably be expected to grow out of this part of the charge, and so would be exhausted to the extent they occurred within the 300 days preceding October 14, 2009. The wallpaper incident and the desk location incident are not alleged in the charge. These concrete incidents cannot reasonably be expected to grow out of the discrimination charge, and are not exhausted.[5]

Defendant has shown that Przychowicz cannot base a discrimination claim on the unexhausted allegations of a June, 2008, confrontation with Quinn over her unauthorized personalized wallpaper, or on the undated confrontation with Quinn over her unauthorized movement of her desk. Her discrimination claim can rest on allegations that she intervened as shop steward on behalf of another employee against Quinn to the extent the intervention occurred within the 300 days preceding October 14, 2009, as well as the other incidents Defendant does not assert are unexhausted.

### b. Taggart's Retaliation Claim

Taggart's retaliation claim (Count II) is exhausted only to the extent it was described in her May 17, 2010 charge. That charge alleges discrimination between September 1, 2009, and December 31, 2009, and reads:

_____

[5] Defendant does not argue that Przychowicz did not exhaust her retaliation claim. (D.I. 39-4, Ex. 2).

8

> The Delaware Department of Labor concluded its investigation of the
> previous [discrimination] charge on June 30, 2009. In September 2009,
> Charging Party was demoted. She was forced to work in a new location with
> less pay and a smaller pension. She was denied access to a working computer or
> to Respondent's email system. She was frequently asked when she planned to
> retire. Charging Party's employment became untenable. She was constructively
> discharged in December 2009, when she retired.

(D.I. 39-2, Ex. 16). Defendant argues Taggart did not exhaust all the allegations underlying her

retaliation claim here, including "snide" remarks by a supervisor; Taggart's work being

scrutinized or generating a warning; relocation within the Tatnall Street building; comments

about that move; and unresponsive supervisors. (D.I. 38-1 at 23). Taggart makes no argument

that these additional specific allegations were exhausted. (D.I. 56 at 6). Defendant concedes

Taggart exhausted the allegations of her demotion, relocation to the Washington Street facility,

denial of access to the computer system and email, questions about her retirement, and

constructive discharge. (D.I. 38-1 at 23).

Taggart's charge alleges "[s]he was forced to work in a new location," without specifying

any particular location. However, the February, 2008, Tatnall Street move and the alleged

comments about that move occurred before September 1, 2009, the earliest date Taggart charged

retaliation occurred. (D.I. 39-2 at 116; Ex. 16). The undated allegations of snide remarks,

scrutinized work, and unresponsive supervisors cannot reasonably be expected to grow out of any

allegations in the charge, and therefore are not exhausted. Taggart cannot base her retaliation

claim here on the Tatnall Street move, comments thereon, snide remarks, scrutinized work, or

unresponsive supervisors.

### 2. *Pryzchowicz's Gender Discrimination Claim Fails*

In Count I, Przychowicz generally claims gender discrimination under 42 U.S.C. § 2000e-

9

2(a). (D.I. 1-1 at 25-26). Defendant first analyzes Przychowicz's discrimination claim under the hostile work environment rubric, which seems appropriate in light of Przychowicz's allegations of Quinn's generally "obnoxious" behavior and her charge of "harassment" and vague "discipline," and which Przychowicz does not dispute. (D.I. 38-1 at 25-26; D.I. 39-4, Ex. 1; D.I. 56 at 31).

### a. Hostile Work Environment

A prima facie case of discrimination based on a hostile work environment requires a plaintiff to demonstrate that (1) she suffered intentional discrimination on the basis of membership in a protected group; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race, gender, religion, or national origin in the same position; and (5) the existence of respondeat superior liability. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir.), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In analyzing a hostile work environment claim, the Court must consider "the totality of the circumstances." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990). Such circumstances include the "frequency of the allegedly discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Shramban v. Aetna*, 2004 WL 4184841, at *23 (3d Cir. 2004). In evaluating these circumstances, the plaintiff must prove that she was subjected to conduct that was so objectively offensive as to "alter the conditions of her employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Casual, isolated, or sporadic comments or incidents are insufficient to

10

demonstrate a hostile work environment. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."); *Andrews*, 895 F.2d at 1482. Rather, the plaintiff must show that she was subjected to continuous and repeated acts of harassment. *See Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir.1990).

Defendant asserts Przychowicz cannot establish the first element, *i.e.*, that Quinn's behavior was based on Przychowicz's gender. Recognizing Quinn denied Przychowicz's allegations of his behavior, (*see* D.I. 56 at 27-28, citing Quinn's deposition), Przychowicz's testimony about the conduct comprising her discrimination claim indicates any such behavior was directed toward both male and female employees. This is true for both her exhausted and unexhausted allegations. Regarding the allegations of intervening as shop steward in response to Quinn's behavior, Przychowicz testified she did so on behalf of both male and female employees. (D.I. 39-4 at 37-46, 55-57). Przychowicz testified that while Quinn instructed Przychowicz to remove her unauthorized personalized computer wallpaper (without disciplining her), he permitted other female employees to use personalized wallpaper; and while Quinn disciplined Przychowicz for using her computer for personal reasons, other female employees doing the same thing were not disciplined. *Id.* at 86-91, 78-79. Pryzchowicz did not complain at the time that Quinn's action was based on her gender, and testified that other adverse actions by Quinn were because of Pryzchowicz's role as shop steward. *Id.* at 83, 72-73, 74-75. While Przychowicz's responsive briefing is not evidence, it is worth noting she admitted, "Mr. Quinn expressed his anger toward some male employees." (D.I. 56 at 31). Przychowicz testified that

11

the confrontation with Quinn about her break started with both Quinn and a female supervisor confronting her. *Id.* at 57-60. Assuming Quinn behaved in these incidents as Przychowicz testified, it is clear those confrontations were not motivated by Przychowicz's gender; even if they were exhausted, they could not support a hostile work environment claim.

The remaining unexhausted incidents about which Przychowicz testified involved Quinn's response to Przychowicz handing out union material and to switching desks with another employee without authorization. (D.I. 39-4 at 61, 91-92). There is no gender animus evident in these actions. Przychowicz's argument that Quinn permitted male employees to play music and have newspapers and magazines at their desks is unsupported by competent evidence and does not prove that similarly situated male employees were treated more favorably with regard to any of the alleged incidents. *(See* D.I. 56 at 16-17, 31). There is no evidence in the record to demonstrate that any of Quinn's alleged actions were on the basis of gender. This alone is sufficient to grant Defendant's Motion on Count I.

Przychowicz's hostile work environment claim also fails as a matter of law because she cannot show its third element, *i.e.,* that the discrimination was severe or pervasive. The short-lived incidents on which Przychowicz testified that her discrimination claim was based number fewer than ten over less than three years. Her charge spans even less time, from November 2008 to June 2009. There is no evidence that any confrontation between Quinn and Przychowicz changed the terms, conditions, or benefits of her employment. (D.I. 39-4 at 84-85). Assuming the confrontations with Quinn occurred, their casual, isolated, and sporadic nature would be insufficient to demonstrate a hostile work environment. *See Carter v. Midway Slots & Simulcast,* 2012 WL 4499035, \*9 (D. Del. Sept. 28, 2012) (three isolated acts are not so severe as to

demonstrate a hostile work environment).

### b. Gender Discrimination

The only incident Przychowicz alleged was motivated by gender-based animus is when

she was disciplined for using her computer for personal activity. (D.I. 39-4 at 78-79). Defendant

argues summary judgment is appropriate because this incident cannot support a claim of

intentional discrimination.[6]  (D.I. 38-1 at 33-37) (applying the test set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Przychowicz does not oppose application of

*McDonnell Douglas*. Under this rubric, Pryzchowicz must first establish a prima facie case of

discrimination by showing that: (1) she belongs to a protected class; (2) she suffered an adverse

employment action; and (3) the circumstances of the adverse employment action give rise to an

inference of unlawful discrimination such as might occur when a similarly situated person not of

the protected class is treated differently. *See id.* If the plaintiff establishes a prima facie case of

discrimination, the burden of production shifts to the defendant, who must "articulate some

legitimate, nondiscriminatory reason" for its treatment of the plaintiff. *Id.* If the defendant

produces a sufficient reason for its actions, the burden shifts back to the plaintiff to demonstrate

by a preponderance of the evidence that the employer's rationale is pretextual. *Id.* at 804.

Quinn's discipline of Przychowicz for violating the policy against personal computer use

does not give rise to an inference of unlawful discrimination such as might occur when a

similarly situated male is treated differently. *See id.* at 802. Przychowicz was aware that

personal use of the computer was prohibited, and testified that other female employees were not

---

[6] Defendant does not argue that this incident is not exhausted. Przychowicz's charge
asserts Quinn "monitored internet activity" and "failed to discipline similarly situated employees
regarding their internet usage." (D.I. 39-4, Ex. 1).

13

disciplined for such personal use. (D.I. 39-4 at 78-81). This discipline might give rise to an inference that Quinn singled Pryzchowicz out, but not one that he did so on the basis of her gender. Further, even if it did, the fact that personal use was prohibited is a legitimate, nondiscriminatory reason for Quinn to discipline Przychowicz, under the second step of the *McDonnell Douglas* analysis. *See* 411 U.S. at 802. It appears the resulting suspension was by Przychowicz's female supervisor, for Przychowicz's insubordination in handling the dispute. (D.I. 39-5). Under the third *McDonnell Douglas* step, Pryzchowicz has not provided any evidence that either the prohibition against personal use, or the suspension for insubordination, was pretextual. *See id.*

Pryzchowicz's argument in response, that Pryzchowicz suffered materially adverse employment actions when Quinn moved her office without explanation and when she was ordered to remove her DVD and CD players from her desk where other employees were not, fails to meet her burden. She cites to no record evidence at all, much less any that would give rise to an inference of unlawful discrimination. (D.I. 56 at 31-32). These allegations cannot support a claim of intentional discrimination.

Defendant thus reasonably interprets Przychowicz's broad claims and demonstrates that Pryzchowicz's allegations cannot support a claim for hostile work environment or intentional discrimination. In response, Przychowicz demonstrates only that Quinn disputes her allegations of his behavior. Quinn's denial does not create a genuine issue on which a jury could return a verdict for Przychowicz. Defendant's Motion is granted as to Przychowicz's Claim 1.

14

### 3. *Retaliation Claims*

Taggart and Przychowicz both claim retaliation in violation of 42 U.S.C. § 2000e-3(a).[7]
Defendant contends that neither Plaintiff can make a prima facie case of retaliation because the
alleged retaliatory acts were not causally connected to Plaintiffs' protected activity and, therefore,
summary judgment is appropriate.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show the
following: (1) she engaged in conduct protected by Title VII; (2) after or contemporaneous with
engaging in that conduct, her employer took an adverse action against her; (3) the adverse action
was "materially adverse;" and (4) there was a causal connection between her participation in the
protected activity and the adverse employment action. *Burlington N. & Santa Fe Ry. Co. v.
White*, 548 U.S. 53 (2006); *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006);
*Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

With respect to the causation prong, the court considers whether a reasonable jury could
link the employer's conduct to retaliatory animus. *See Jensen v. Potter*, 435 F.3d 444, 449 n.2
(3d Cir. 2006) (explaining "[t]he ultimate question in any retaliation case is an intent to retaliate
vel non"). Where there is no evidence that the decision-maker knew of protected activity, and
there is no temporal proximity between the plaintiff's protected activity and the employer's
allegedly retaliatory response, there is no causation. *Clark County School District*, 532 U.S. at
273.

---

[7] Plaintiffs' retaliation claim cites 42 U.S.C. § 2000E-5(f)(1) and (g); the Court presumes
Plaintiffs meant to cite Title VII's prohibition against retaliation. (*See* D.I. 1-1, ¶ 105).

15

### a. Taggart's Retaliation Claim Fails.

Taggart has no facts to indicate that any supervisor responsible for the alleged retaliatory incidents had any knowledge of her April 2008 discrimination claim. (D.I. 39-2 at 49, 54, 63, 76, 125-26, 198). Taggart did not implicate Quinn himself in any of the alleged retaliatory incidents. She also testified she had "no facts to support that anyone at Verizon" was aware of the Department of Labor's final determination of her charge. *Id.* at 126-27. The alleged retaliatory events do not follow Taggart's April 2008 discrimination claim closely in time. Taggart cannot establish a causal connection between her discrimination claim and the alleged harrassing incidents.

Taggart charged and alleged that the office move of her entire work group was retaliatory against her. (D.I. 39-2, Ex. 16). Taggart claims that her entire Assignment Technician unit was moved from the Tatnall Street facility to another facility on Washington Street in October, 2009, and that this move was retaliatory against Taggart. (D.I. 1-1, ¶¶ 19, 21; D.I. 39-2, Ex. 16; D.I. 39-2 at 15-16, 20-21, 127). Taggart has not produced any evidence of causation. As a threshold matter, the related allegation that she was "demoted" and forced to work in the new location "with less pay and a smaller pension" is refuted by Taggart's own testimony, in which she admitted she was not demoted and that her pay and benefits were never reduced. (D.I. 39-2 at 26-27, 124-25). Taggart's unsupported statement in her brief to the contrary does not create a genuine issue of material fact on this point. (*See* D.I. 56 at 30). As for the move itself, it occurred over a year after Taggart's April 2008 discrimination claim; this period is too attenuated to establish causation by temporal proximity. *See LeBoon v. Lancaster Jewish Community Ctr.*, 503 F.3d 217, 232 (3d Cir. 2007) (finding three months to be insufficient); *Andreoli v. Gates*,

16

482 F.3d 641, 650 (3d Cir. 2007) (finding five months to be insufficient). Taggart provides no other evidence of causation.[8]

Taggart's next exhausted claim alleges that after the move to the Washington facility, "[s]he was denied access to a working computer or to [Verizon's] email system." When Taggart reported that her computer did not work, it was fixed. (D.I. 39-2 at 34-35). As far as being excluded from emails and the email system, Taggart testified she had "no facts" to indicate the supervisors involved in those incidents (Kathleen McDermott and Marilyn Belson) knew Taggart had filed a discrimination claim. *Id.* at 54, 63, 125-26). These incidents are even further in time from Taggart's claim than the move itself. Taggart has not produced any evidence of retaliatory animus behind these incidents.

Taggart's last exhausted allegation is that "[s]he was frequently asked when she planned to retire." (D.I. 39-2, Ex. 16). Taggart testified Kathleen McDermott, Robin Herr, and Brian McGee inquired about her retirement, but also testified that she had "no facts" to indicate they

---

[8] Even if Taggart had exhausted her allegation that the February 2008 Tatnall Street was retaliatory, that incident could not support a retaliation claim because she cannot prove causation. She testified that her group requested to move from the second floor of Verizon's Tatnall Street building in or around February 2008, but that Brian Magee, who approved the move, retaliated against Taggart because her group was moved to the third floor, which required cleaning, instead of the fourth, which was already set up. (D.I. 39-2 at 38, 75-76). Taggart testified she had "no facts to support" that Magee's approval was retaliatory, and "no facts to support" that her unit was transferred because of Quinn. *Id.* at 76, 185. The Tatnall move occurred before Taggart's April 2008 discrimination claim, was requested by Taggart's group, affected Taggart's entire group, and was approved by someone about whom there was no evidence to show knew of Taggart's discrimination claim. While Taggart testified that Christine Paraskewich, another Verizon employee, visited the group after their move and made remarks such as, "oh, I guess you people have learned your lesson; I guess you people will shut your mouth now," there is no evidence that Paraskewich knew of Taggart's discrimination claim or that she had any role in the move that Taggart's group requested. *See id.* at 55, 126. The quoted remark is pretty vague, at best, as to what Paraskewich meant.

17

knew she had filed a discrimination claim. *Id.* at 34, 35, 63, 76, 82-84, 125-26.

In opposition to Plaintiff's Motion, Taggart alleges – without citing any record evidence – that Defendant retaliated against her when Magee presented Taggart a retirement offer as the last one she would receive, while others in her group received better offers after Taggart retired, and that this comprises constructive discharge. (D.I. 56 at 30-31). The record shows that Taggart has "no facts" to support any retaliatory animus by Magee, that her relationship with Magee was positive and sincere, and that Taggart accepted the retirement offer voluntarily. (D.I. 39-2 at 76, 82-84). Taggart fails to show retaliatory causation for the retirement package or any constructive discharge.

In sum, Defendant has pointed out Taggart's absence of evidence supporting her retaliation case. Taggart cannot prove that there was a causal connection between her discrimination claim and any of the exhausted alleged adverse employment actions. She has no evidence that any supervisor implicated in any of the alleged incidents knew of her discrimination claim, and too much time elapsed between her claim and the incidents to prove causation by temporal proximity. She cannot prove that she was demoted, lost pay or benefits, or was constructively discharged.

### b. Przychowicz's Retaliation Claim Fails.

Przychowicz also fails to show causation for her retaliation claims. For each alleged retaliatory incident, Pryzchowicz testified she had no facts other than her belief the incidents occurred after she filed her discrimination claim to support causation. (D.I. 39-4 at 144, 145). Pryzchowicz filed her discrimination claim on October 14, 2009, and alleges retaliatory incidents on December 1, 2009, and January 15, 2010. (D.I. 39-4, Ex. 1; *id.* at 141-143, 102-105).

18

Przychowicz has no facts to show that the supervisors involved in the incidents knew about Pryzchowicz's discrimination claim. *Id.* at 112-13; 143-44; 145-46; 154-56. The timing of these alleged incidents, without more, cannot prove temporal causation, and Przychowicz does not argue otherwise in opposing Defendant's Motion.[9] *See LeBoon*, 503 F.3d at 232; *Andreoli*, 482 F.3d at 650; (D.I. 56 at 31-32).

Not every mundane workplace experience that occurs after a discrimination charge is filed is evidence of retaliation. "[M]inor or trivial actions that merely make an employee 'unhappy' are not sufficient to qualify as retaliation under the ADA, for otherwise every action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir.1998) (internal quotation omitted). The incidents as Przychowicz describes them appear trivial, and in relation to the first incident regarding her time entry code, it appears from paragraph 84 of the Complaint that the whole matter was promptly straightened out. (D.I. 1-1, ¶ 84). Even if Przychowicz had evidence of causation, neither alleged incident appears to be an adverse employment action.

## C. Conclusion

Defendant's Motion is granted. Defendant has shown that significant portions of Przychowicz's discrimination claim and Taggart's retaliation claim are unexhausted. Defendant has also pointed out the absence of evidence supporting Plaintiffs' claims, specifically with regard to causation: *i.e.*, that the alleged incidents making up Przychowicz's hostile work

---

[9] Pryzchowicz's brief argues in support of her retaliation claim by alleging additional, undated incidents. This unsupported argument does not rescue her retaliation claim, which fails based on the incidents for which record evidence exists. (D.I. 56 at 31-33).

19

environment were on the basis of her gender, that the discipline for Pryzchowicz's personal computer use gives rise to an inference of unlawful discrimination, and that the alleged incidents making up each Plaintiffs' retaliation claim had a causal connection to their discrimination claims. This absence of causation evidence is pervasive, affecting both exhausted and unexhausted allegations. Plaintiffs' Opposition fails to make a sufficient showing on exhaustion and causation - essential elements of their case with respect to which they have the burden of proof.

An appropriate order will be entered.

20